IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LORD VERSATILE,           )
                            )
     Plaintiff,         )
v.                        )         Civil Action No. 3:11CV308–HEH
                            )
LORETTA KELLY, *et al.*,   )
                            )
     Defendants.    )

## MEMORANDUM OPINION
### (Dismissing 42 U.S.C. § 1983 Action)

Plaintiff, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this civil action. On January 23, 2012, by Memorandum Order, the Court directed Plaintiff to file a particularized complaint. The Court warned Plaintiff that the Court would dismiss any improperly joined claims. Plaintiff filed his Amended Complaint (Dk. No. 13) on February 8, 2012. The matter is before the Court for evaluation pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. Jurisdiction is appropriate pursuant to 28 U.S.C. §§ 636(b) and 1343(a)(3).

## I. PRELIMINARY REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); see 28 U.S.C. § 1915A. The first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims where the "'factual contentions are clearly baseless.'" *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490

U.S. 319, 327 (1989)).  The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.  This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555 (citations omitted).  Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable."

2

*Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Bell Atl. Corp.*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF ALLEGATIONS AND CLAIMS

Plaintiff's Amended Complaint[1] consists of twenty-nine handwritten pages alleging a total of four separate claims. These four claims arise out of the facts of three separate incidents set forth in fifty-six separately numbered paragraphs. Though some claims do share defendants, they are (with the exception of Claims One and Two) factually and legally distinct from one another.

---

[1] Where appropriate, the Court will correct capitalization, punctuation, and spelling in citations to the Amended Complaint.

## A.   Claims One and Two

Plaintiff alleges that, on September 2, 2009, Correctional Officers ("CO") shook down the cell he shared with Thomas A. Chilton, III. The COs "found two pieces of fence wire inside of the vent of the cell." (Am. Compl. 2.) Neither Plaintiff nor his cellmate, Chilton, admitted to placing the fence wire in the vent. Prison officials charged Plaintiff with possession of a weapon, however, "Plaintiff was never offered the mandatory penalty offer that is required to be offered during the servicing of the charge by the OIC and serving officer."[2] (*Id.* at 3.) Plaintiff refused to sign the charging document.

On September 14, 2009, Inmate Hearing Officer ("IHO") Mavor denied Plaintiff's request to admit the cell inspection form created prior to Plaintiff and Chilton moving into the cell. IHO Mavor then convicted Plaintiff of possession of a weapon and sentenced him to "more than 20 days in isolation, [ ] placed [Plaintiff] in non-privilege housing for an additional 90 days where he lost the privileges that were afforded to general population offenders." (*Id.* at 13.) Plaintiff states that he "was further penalized during his annual review because of the conviction of the charge lost his GCA[3] class level decreasing him from GCA level I, to GCA level III."[4] (*Id.*)

---

[2] Plaintiff avers that prison officials charged him on September 2, 2009 but did not charge Chilton until September 12, 2009.

[3] "GCA" refers to Good Conduct Allowances earned by prisoners convicted between July 1, 1981 and January 1, 1995. Section 53.1–199 of the Code of Virginia states that:

> [G]ood conduct allowance shall be applied to reduce the [prisoner's] maximum term of confinement while he is confined in any state correctional facility [and] [o]ne-half of the credit allowed under the provisions of § 53.1–201 shall be

Based on the foregoing, Plaintiff makes the following claims:

Claim One    CO Rodriguez, CO Davis, Capt. Tuelle, IHO Mavor, A.F. Miller, L. Kelly, A. David Robinson, and Gene Johnson violated Plaintiff's Due Process[5] rights by finding him guilty of possession of a weapon, sentencing him to twenty days isolation and ninety days loss of privileges, and upholding this conviction and sentence on appeal. These parties further violated Plaintiff's Due Process rights when, because of this conviction, his GCA classification was amended from GCA level I to GCA level III.

Claim Two    Capt. Tuelle violated Plaintiff's right to Equal Protection[6] when he made "a mandatory penalty offer to Plaintiff's cell partner, Thomas A. Chilton, III . . . . [but] did not offer or insure that Plaintiff was offered the mandatory penalty offer." (Am. Compl. 21.)

**B.    Claim Three**

In Claim Three, Plaintiff alleges that on June 9, 2011 and June 22, 2011 prison officials confiscated "personal property (legal materials) and charged Plaintiff with possession of Gang Related Materials for having legal materials that pertain to the Nation

---

applied to reduce the period of time a person shall serve before being eligible for parole.

Va. Code Ann. § 53.1–199 (West 2011). GCAs are based on a four-level classification system. "Persons may be reclassified for an increase or decrease in class according to rules and regulations established pursuant to § 53.1–200." Va. Code Ann. § 53.1–201 (West 2011). The rate at which inmates earn GCAs is a function of which classification level the Virginia Department of Corrections assigns them.

[4] Plaintiff unsuccessfully appealed IHO Mavor's decision. Paragraphs 27 through 35 of his complaint document this unsuccessful appeal. Because of the nature of Plaintiff's claims, *see infra* Part IV, a recitation of the alleged facts surrounding the appeal is unnecessary.

[5] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV § 1.

[6] "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1.

of Gods and Earths (Five Percenters) that Plaintiff previously had received from the

Office of the Attorney General of Virginia." (Am. Compl. 22–23.) On July 19, 2011, an

IHO, allegedly finding that the "law-suit [which the documents were related to was]

over," found plaintiff guilty of possession of gang related materials and imposed a ten

dollar fine. (*Id.* at 11.) Plaintiff alleges that, by these actions, his Fourteenth Amendment

rights were violated. Given the disposition of Claim Three *infra* Part III, it is not

necessary to recite further details of it here.

>    **C.    Claim Four**

Plaintiff alleges that prison officials violated his Eighth Amendment and

Fourteenth Amendment rights when "on November 18, 2010 T. Folkes attempted to force

Plaintiff to sign a contract to have 5% of his offender pay withheld to be applied towards

any court imposed fines." (*Id.* at 26.) Plaintiff further alleges that he "was forced to

work for approximately eight (8) months without being paid for any of the hours he

worked (December 27, 2010 to August 14, 2011)." (*Id.* at 26–27.) Given the disposition

of Claim Four *infra* Part III, it is not necessary to recite further details of it here.

>    **III. DISPOSITION OF IMPROPERLY JOINED CLAIMS**

Federal Rule of Civil Procedure 18(a) provides that: "A party asserting a claim,

counterclaim, crossclaim, or third-party claim may join, as independent or alternative

claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Nevertheless, when a plaintiff seeks to bring multiple claims against multiple defendants

he must also satisfy Federal Rule of Civil Procedure 20, which provides:

> **(2) Defendants.** Persons . . . may be joined in one action as defendants if:
> (A) any right to relief is asserted against them jointly, severally, or in the
> alternative with respect to or arising out of the same transaction,
> occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the
> action.

Fed. R. Civ. P. 20(a). "The 'transaction or occurrence test' of the rule . . . 'permit[s] all

reasonably related claims for relief by or against different parties to be tried in a single

proceeding. Absolute identity of all events is unnecessary.'" *Saval v. BL Ltd.*, 710 F.2d

1027, 1031 (4th Cir. 1983) (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333

(8th Cir. 1974)). "But, Rule 20 does not authorize a plaintiff to add claims 'against

different parties [that] present[ ] entirely different factual and legal issues.'" *Sykes v.

Bayer Pharm. Corp.*, 548 F. Supp. 2d 208, 218 (E.D. Va. 2008) (alterations in original)

(quoting *Lovelace v. Lee*, No. 7:03cv00395, 2007 WL 3069660, at *1 (W.D. Va. Oct. 21,

2007)). "And, a court may 'deny joinder if it determines that the addition of the party

under Rule 20 will not foster the objectives of [promoting convenience and expediting

the resolution of disputes], but will result in prejudice, expense, or delay.'" *Id.* (quoting

*Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007)).

    In addressing joinder, the Court is mindful that "the impulse is toward entertaining

the broadest possible scope of action consistent with fairness to the parties; joinder of

claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v.

Gibbs*, 383 U.S. 715, 724 (1966). This impulse, however, does not provide a plaintiff

free license to join multiple defendants into a single lawsuit where the claims against the

defendants are unrelated. *See, e.g., George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007);

7

*Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). Thus, "[a] buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner." *George*, 507 F.3d at 607.

"The Court's obligations under the PLRA include review for compliance with Rule 20(a)." *Coles v. McNeely*, No. 3:11CV130, 2011 WL 3703117, at *3 (E.D. Va. Aug 23, 2011) (citing *George*, 507 F.3d at 607). "Thus, multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that these complaints have produced but also to ensure that prisoners pay the required filing fees." *Id.* (citing 28 U.S.C. § 1915(g); *Showalter v. Johnson*, No. 7:08cv00276, 2009 WL 1321694, at *4 (W.D. Va. May 12, 2009)).

Here, Claims One and Two, concerning a disciplinary hearing for possession of a weapon, and Claim Three, concerning a disciplinary hearing for possession of gang related materials which occurred on a different date, do not arise out of the same transaction or occurrence and do not present common questions of law and fact. Moreover, Claim Four, wherein Plaintiff disputes the amount of pay he should receive for his offender work program, is factually and legally distinct from Claims One, Two, and Three. Though some of Plaintiff's claims share common defendants, the claims against the various defendants fail to satisfy either of the requirements for permissive joinder.

8

*Ghashiyah v. Frank*, No. 05–C–0766, 2008 WL 680203, at * 2 (E.D. Wis. Mar. 10, 2008) (noting that "the fact that Claim A shares two out of twenty defendants in common with unrelated Claim B and its ten defendants, does not mean that Claim A and Claim B are appropriately united in a single action"). Here, Plaintiff's Claims One and Two arise from disparate transactions and are not joined by a common question of law or fact to either Claims Three or Four. Neither Rule 20(a), nor the interests of judicial economy, permit Plaintiff to pursue his "mishmash of a complaint" in its current form. *George*, 507 F.3d at 607.

The Court previously warned Plaintiff that the Court would dismiss any improperly joined claims. Given these circumstances, the Court will dismiss claims Three and Four without prejudice. Plaintiff remains free to re-file these claims in new complaints. *Jackson v. Olsen*, 3:09CV43, 2010 WL 724023, at *8–9 (E.D. Va. Mar. 1, 2010).

Plaintiff's Claims Three and Four will proceed as separate actions. *See George*, 507 F.3d at 607. Within twenty (20) days of the date of entry hereof, Plaintiff must file new complaints for these claims. Any forthcoming new complaint(s) must comport with Rules 8 and 20 of the Federal Rules of Civil Procedure. Plaintiff will be responsible for the full filing fee for each new complaint he submits. *See DirecTV v. Beecher*, 296 F. Supp. 2d 937, 945 (S.D. Ind. 2003).

Any new complaint(s) must set forth legibly, in separately numbered paragraphs, a short statement of the facts giving rise to each claim against each defendant. Plaintiff also must state what civil rights he believes each defendant violated and explicitly state

how said defendant's actions violated each constitutional right. The new complaints must stand or fall of their own accord and may not incorporate any other document by reference. The failure to submit a proper new complaint for any claim or defendant within twenty (20) days of the date of entry hereof will result in the dismissal of that claim or defendant(s). *See* Fed. R. Civ. P. 41(b).

## IV.   REMAINING CLAIMS

In order to state a viable claim against an individual under 42 U.S.C. § 1983, a plaintiff must allege facts that plausibly suggest that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983).

### A.   Claim One

In Claim One, Plaintiff alleges that prison officials punished him with twenty days isolation, ninety days loss of privileges, and caused a downgrade in his GCA level in violation of his due process rights. The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citing cases). A liberty interest may arise from the Constitution itself, or from state laws and policies. *See Wilkinson v. Austin*, 545 U.S. 209, 220-21 (2005).

10

To demonstrate the existence of a state-created liberty interest, Plaintiff must make a threshold showing that the deprivation imposed amounts to an "atypical and significant hardship" or that it "inevitably affect[s] the duration of his sentence." *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995); *see Puranda v. Johnson*, No. 3:08CV687, 2009 WL 3175629, at *4 (E.D. Va. Sept. 30, 2009) (citing cases). If the nature of the restraint the plaintiff challenges meets either prong of this threshold, he must next show that Virginia's statutory or regulatory language "'grants its inmates . . . a protected liberty interest in remaining free from that restraint.'" *Puranda*, 2009 WL 3175629, at *4 (alteration in original) (quoting *Abed v. Armstrong*, 209 F.3d 63, 66 (2d Cir. 2000)). "Because mandatory language might create a 'right' when removing an agency's discretion, Courts generally evaluate whether the statute or regulation speaks in mandatory or permissive terms in order to make this determination." *Id.*

### 1.    Isolation and Loss of Privileges

Plaintiff fails to allege facts that plausibly suggest that he has a protected liberty interest in avoiding isolation. The courts in the Fourth Circuit have repeatedly rejected the notion that inmates enjoy a protected liberty interest in avoiding confinement in segregation. *See United States v. Daniels*, 222 F. App'x 341, 342 n.* (4th Cir. 2007) ("Extended stays on administrative segregation . . . do not ordinarily implicate a protected liberty interest." (citing *Beverati*, 120 F.3d at 502)). However, some courts have concluded that inmates may enjoy a liberty interest in avoiding solitary confinement or isolation. *Compare Bynum v. Saunders*, No. 3:10CV28-HEH, 2010 WL 4975428, at *2 (E.D. Va. Nov. 30, 2010) (citing cases for the proposition that there is no liberty interest

11

in avoiding placement in isolation), *with Brown v. Angelone*, 938 F. Supp. 340, 344

(W.D. Va. 1996) (citing *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974)). Nevertheless,

after *Iqbal* and *Sandin*, the simple label of solitary confinement does not sufficiently

plead a plausible claim for a denial of due process. *See Ashcroft v. Iqbal*, 129 S. Ct.

1937, 1949 (2009). Rather, a plaintiff must allege facts suggesting that his or her

conditions in administrative segregation or solitary confinement constitute an "atypical

and significant hardship on the inmate in relation to the ordinary incidents of prison life."

*Sandin*, 515 U.S. at 484; *Stoudemire v. S.C. Dep't Corr.*, No. 8:08-03866, 2009 WL

2207819, at *4 (D.S.C. July 23, 2009). Plaintiff has not done so. Therefore, he fails to

allege a plausible claim that he has a liberty interest in avoiding placement in segregation

or solitary confinement. *See Knight v. Johnson*, No. 3:10CV648, 2011 WL 4101664, at

*5 (E.D. Va. Sept. 14, 2011).

Likewise, Plaintiff, contrary to his claims, does not enjoy a protected liberty

interest in privileges.

> [W]here an inmate receives a change in housing assignment or a loss of
> privilege that is simply an expected part of prison confinement, no
> protected liberty interest arises, and that inmate has no claim for relief
> under the Due Process Clause, even if the change occurred without all the
> state-created procedural protections during a disciplinary hearing.

*Williams v. Calton*, No. 7:10CV00075, 2010 WL 3785786, at *3 (W.D. Va. Sept. 28,

2010) (citing *Sandin*, 515 U.S. at 484); *Watson v. Hall*, No. 1:07cv928(TSE/TRJ), 2008

WL 149133, at *4 (E.D. Va. Jan. 8, 2008) ("Plaintiff's two-week placement in

segregation and accompanying loss of privileges is insufficient to trigger any due process

interest in avoiding such placement."). Because "[s]olitary confinement with a temporary

12

loss of privileges, including exercise, recreation, and access to personal property, have been held typical incidents to sentences imposed by conviction of a criminal offense," Plaintiff fails to identify any atypical or undue hardship resulting from his isolation and loss of privileges. *Lamp v. Wallace*, No. 3:04CV317, 2005 WL 5303512, at *7 (E.D. Va. Mar. 23, 2005) (citing *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (confinement to segregation for 37 days without contact visits)). Thus, Plaintiff does not plead a deprivation of a protected liberty or property interest entitled to the protections guaranteed by the Due Process Clause.

### 2.     GCA Classification

Plaintiff complains that Defendants punished him by reducing his GCA classification. Nevertheless, because the Virginia Code and the relevant regulations grant absolute discretion to prison officials, this Court has repeatedly concluded that Virginia "[i]nmates have no protected liberty interest in remaining in or being assigned to a particular good conduct allowance level." *DeBlasio v. Johnson*, 128 F. Supp. 2d 315, 329 (E.D. Va. 2000) (citing *James v. Robinson*, 863 F. Supp. 275, 278 (E.D. Va. 1994), *aff'd*, 45 F.3d 426 (4th Cir. 1994); *Alley v. Angelone*, 962 F. Supp. 827, 834 (E.D. Va. 1997)); *see also Sydnor v. Mahon*, No. 3:10CV780–HEH, 2012 WL 604039, at *4 (E.D. Va. Feb. 23, 2012) ("[I]t is well established that Virginia inmates do not enjoy a protected liberty interest in the rate at which they earn . . . Good Conduct Allowances." (citing cases)).

In pleading Claim One, Plaintiff fails to show the deprivation of any freedoms in which he had a liberty interest. Accordingly, because Plaintiff fails to state a claim upon which relief can be granted, Claim One will be dismissed.

### B.    Claim Two

In Claim Two, Plaintiff asserts that, by treating him differently from his "cell partner," Capt. Tuelle "violated Plaintiff's due process right to equal protection." (Am. Compl. 21.) Plaintiff alleges that Capt. Tuelle treated him differently from his cell partner by failing to make Plaintiff a "mandatory penalty offer" and charging Plaintiff's cell partner, Chilton, ten days after charging Plaintiff. (*Id.*) To properly plead an equal protection claim, a plaintiff must allege facts that plausibly suggest he was "treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

To begin with, Plaintiff cites no authority for his contention that, by charging Chilton ten days after charging Plaintiff, Tuelle engaged in the type of unequal treatment prohibited by the Constitution. Moreover, Plaintiff offers no facts leading to a plausible inference that Tuelle's alleged failure to make Plaintiff a "mandatory penalty offer" was the result of intentional or purposeful discrimination rather than mere negligence. *C&H Co. v. Richardson*, 78 F. App'x 894, 902 (4th Cir. 2003) ("[A] plaintiff alleging an Equal Protection violation actionable under § 1983 must establish that the differential treatment

14

it was afforded was intentional, not the result of mere negligence." (citing cases)).[7]

Indeed, the most plausible inference is that Tuelle was simply negligent. Accordingly, because Plaintiff alleges no purposeful discrimination, Claim Two fails to state an equal protection claim for which relief can be granted and will be dismissed.

## V. CONCLUSION

Plaintiff's Claims Three and Four will be dismissed without prejudice. Claims One and Two will be dismissed with prejudice and the action will be dismissed. The Clerk will be directed to note the disposition of the action for purposes of 28 U.S.C. § 1915(g).

An appropriate Order shall accompany this Memorandum Opinion.

_____/s/_____
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: April 13 2012
Richmond, Virginia

---

[7] In *Richardson*, the Fourth Circuit went on to explain:

> The requisite intent in this context is more than simple awareness of the course of action being taken. As the Supreme Court has explained, "[d]iscriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences." *Personnel Adm'r v. Feeney*, 442 U.S. 256, 279 (1979) (internal quotation marks omitted). Rather, "[i]t implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.*

*Richardson*, 78 F. App'x at 902 (parallel citation omitted; alterations and omissions in original).

15